SCHOUWEILER *et al.* v. MERCHANTS' MUTUAL INSURANCE ASSOCIATION.

1. An insurer, failing to appoint an appraiser to assist in adjusting a loss by arbitration, according to a provision of the policy, after insured had twice requested him to do so, and then agreeing to a submission not in accordance with the policy, thereby waives a condition of the policy requiring a determination of the amount of the loss by arbitration.

2. In an action on an insurance policy, where defendant pleads failure to arbitrate, as provided by the policy, letters by plaintiff to defendant asking an arbitration are admissible to show good faith.

(Opinion filed February 1, 1899.)

Appeal from circuit court, Brookings county.   Hon. J. O. ANDREWS, Judge.

Action by N. A. Schouweiler and another, co-partners, against the Merchants' Mutual Insurance Association.   Judgment for plaintiffs, and defendant appeals.   Affirmed.

The facts are stated in the opinion.

*Mathews & Murphy* and *Thomas Sterling,* for appellant.

Appraisement was a condition precedent to plaintiff's right to sue.   Gassner v. Sun Fire Office (Minn.), 44 N. W. 252; Chippewa Lumber Co. v. Ins. Co. (Mich.), 44 N. W. 1055; Morely. v. Ins. Co. (Mich.), 48 N. W. 502; Hamilton v. Ins. Co. 136 U. S. 242; Hutchinson v. Ins. Co. (Mass.), 10 L. R. A. 558; Corrall v. Fire Ins. Co., 72 Cal. 297; Bank v. Ins. Co., 6 S. D. 424.

*Cheever & Hall* and *Alexander & Hooker,* for respondents.

An agreement to arbitrate is a waiver of right to appraisement.   Adams v. Ins. Co., 51 N. W. 1149; Summerfield v. Ins. Co., 62 Fed. 249; Harrison v. Ins. Co. 67 Fed. 577; Ins. Co. v. Hamilton, 59 Fed. 258; Doying v. Ins. Co., 27 Atl., 927; Ostrander, Fire Ins., §§ 265,266, 272, 261.

CORSON, P. J.   This was an action on a policy of insurance. The plaintiffs recovered judgment, and the defendant appeals. The defendant in its answer sets up as a defense to the action, that, by a provision in one clause of the policy, no action can be maintained thereon by the plaintiffs until the expiration of

60 days after the loss or damage had been determined by arbitrators appointed as specified in the policy. This clause of the policy reads as follows: "In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expense of the appraisal and umpire." "This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required." Section 7, Chapt. 99, Laws 1895, reads as follows: "Every member of said company who may sustain loss or damage by fire, shall immediately notify the secretary of said company, specifying the property destroyed, the damage and cause thereof, which officer shall, within thirty days thereafter, ascertain and adjust the amount of such loss or damage, and, in case a satisfactory settlement cannot be made by him, he shall appoint a committee of not more than three disinterested members of said company, to ascertain the amount of such loss, and

in case of the inability of the parties to agree upon the amount of such damage, the claimant shall choose a disinterested party and the company shall choose a disinterested party, who shall constitute a board of arbitration to settle such loss, and in case these parties cannot agree, they shall choose a third party to act with them, and said board of arbitration shall have power to examine witnesses and determine all matters in dispute, and the decision of said board shall be final.'' It is contended by the appellant that the loss and damage to the plaintiffs was not ascertained by arbitration, as provided in said clause of the policy, and said Section 7 of the act referred to, and hence the plaintiffs cannot maintain this action. Respondents insist that the defendant, by its acts and declarations, and by entering into an agreement for an arbitration hereinafter referred to, waived its right to insist upon the conditional clause contained in the policy hereinafter considered.

The fire causing the loss and damage occurred on October 26, 1895. Notice of loss was served upon the defendant and proofs made on December 19, 1895. The defendant's adjuster examined into the nature of the loss, and had some negotiations for an adjustment of the same with the plaintiffs, but no definite agreement as to the amount of loss and sum to be paid thereon was arrived at. The defendant appointed no committee, as provided by Section 7. It appears by paragraph 12 of the complaint, and is admitted by the answer, ''that on the 23d day of November, 1895, the said plaintiffs offered in writing to the said defendant to have the amount of the said loss and damage ascertained by two competent and disinterested appraisers to be chosen by the said plaintiffs and the said defendant, respectively, those two first selecting an umpire, pursuant to the

·provisions of the said policy; which offer was by the said de-
fendants refused. That thereafter, and on the 27th day of De-
cember, 1895, the said plaintiffs, in writing, renewed the said
offer, and did appoint one E. A. Brown, who was then and
there a competent and disinterested person and member of the
said defendant company, and who was willing to serve as such,
to be such appraiser upon the part of the said plaintiffs, but
that the said defendant refused and neglected, and still refuses
and neglects, to appoint any second appraiser, or to participate
in any estimate, ascertainment or appraisal in the manner pro-
vided in the said policy." But the defendant denies that it re-
fused said offer. However, no arbitrators seem to have been
appointed, and nothing further done towards an adjustment of
the loss, until December 27th, when the plaintiffs forwarded by
mail to the defendant the following communication: "Elkton,
S. D., December 27, 1895. The Merchants' Mutual Insurance
Association, Redfield, South Dakota—Gentlemen: Pursuant to
the provisions of policy No. 154, issued by you to me, April 8,
1895, a loss under which occurred October 26, 1895, and you
and ourselves being unable to agree as to the amount of loss to
which we are entitled under the said policy, we have hereby
appointed, and do appoint, to act as an appraiser of said loss,
Mr. E. A. Brown, of Elkton, S. D., a disinterested member of
said association, and residing at the town of Elkton, county of
Brookings, and State of South Dakota, and we hereby request
you to appoint a second appraiser, pursuant to the provisions
of the said policy, and of section seven of chapter ninety-nine
of the Session Laws of South Dakota for the year 1895.
[Signed] Schouweiler Bros., by N. A. Schouweiler." No reply
was made to this communication on the part of the defendant,

and it took no steps looking to the appointment of an arbitrator on its part, as requested in said communication, though the secretary of the defendant visited Elkton within a few days after December 27th, and had various interviews with the plaintiffs, which culminated on February 6th in the submission of the loss to arbitration, but not in accordance with the conditions of the policy or Section 7, above referred to. The appraisers named in the agreement met about February 20th, but they did not select an umpire at that time, and, failing to agree upon the loss sustained by the plaintiffs, subsequently attempted to select an umpire, but without success, and, after a week or so, notified the parties that the appraisers could not agree. On the 19th of March following, plaintiffs instituted this action upon the policy.

It seems to be well settled that when an insurance company relies upon the condition of a policy that no action can be maintained against it until the amount of loss shall be ascertained and fixed by appraisers as specified in the conditions of the policy, it must be strictly construed, as against the company. The condition in the policy is inserted therein for the benefit of the company, and, to avail itself of this condition, it must proceed promptly to take the necessary steps to have the amount of the loss adjusted as provided in the policy and in Section 7, above referred to. In this case, it will be observed that the plaintiffs, as early as November 23d, offered in writing to submit the loss to appraisement, in accordance with the conditions of the policy. It will be further observed that, on December 27th, the plaintiffs again proposed to submit the matter to arbitration, and selected and named the person to act on their part, and that the defendant again failed and neglected

to appoint an appraiser on its part, and never did, in fact, either appoint a committee, as provided in section 7. or an appraiser as provided in the policy. Its subsequent act of entering into an agreement to submit the matter to arbitration, in connection with its implied refusal to appoint an appraiser as provided in the policy, clearly shows a waiver of the condition in the policy, and it cannot now be heard to say the condition in the policy was not complied with. Adams v. Insurance Co. (Iowa), 51 N. W. 1149; Summerfield v. Insurance Co., 62 Fed. 249; Harrison v. Insurance Co,, 67 Fed. 577; Insurance Co. v. Hamilton, 8 S. C. C. A. 114, 59 Fed. 258; Doying v. Insurance Co. (N. J. Err. & App.) 27 Atl. 927.

It is strenuously contended on the part of the defendant that the circuit court erred in admitting the letters and documents showing the efforts on the part of the plaintiffs to secure an appraisement in the manner provided in the policy, as it contends that such negotiations ultimately resulted in the arbitration agreement of February 6th; but this contention is not tenable, for the reason that the evidence was clearly admissible to show that the plaintiffs in good faith, sought to have the loss adjusted by appraisers as provided in the policy, and to establish the fact that the defendant, by impliedly refusing to comply with the plaintiff's request, waived its right to insist upon the condition in the policy. Besides, the evidence admitted had reference to the condition in the policy, but the agreement entered into on February 6th was an attempt to have the loss adjusted by a common-law arbitration, and not in pursuance of the terms of the policy, and hence had no connection with the negotiations relating to the appraisement under the policy and statute. From such an agreement either party could withdraw

before the making of an award.    The agreement on the part of
the defendant had the effect, however, in connection with the
implied refusal of the defendant to proceed under the terms of
the policy, to prove that it had waived its right to have the loss
ascertained by appraisement.    Our conclusion is that the ver-
dict and judgment of the circuit court were correct, and the
same are affirmed.